IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIAN RAY AKI., <br><br>　　　　　Plaintiff, <br><br>　v. <br><br>UNIVERSITY OF CALIFORNIA LAWRENCE BERKELEY NATIONAL LABORATORY, <br><br>　　　　　Defendant. | Case No.: 13-cv-04027 <br><br>**ORDER RE: DEFENDANT'S MOTION TO ENFORCE SETTLEMENT** <br><br>Re:  Dkt. No. 50 |

During settlement proceedings on January 9, 2015, Plaintiff Julian Ray Aki ("Plaintiff") entered into an oral agreement with his former employer Defendant Regents of the University of California ("Defendant") resolving this disability discrimination lawsuit. (Dkt. No. 49.) Before the Court is Defendant's Motion to Enforce the Settlement. (Dkt. No. 50.) After reviewing the papers submitted by the parties, the Court determines that the matter is appropriate for resolution without oral argument and GRANTS Defendant's motion.

**BACKGROUND**

Plaintiff filed suit on August 29, 2013 under the Rehabilitation Act of 1973 (20 U.S.C. § 794), the California Confidentiality of Medical Information Act (Cal. Civ. Code. § 56), and Article 1(1) of the California Constitution. (Dkt. No. 1.) Plaintiff initially alleged five causes of action: disability discrimination, failure to accommodate, violation of the Confidentiality of Medical Information Act, and violations of the California constitutional rights to privacy and autonomy. (*Id.*) The Court subsequently granted Defendant's motion to dismiss Plaintiff's third, fourth, and fifth claims. (Dkt. No. 37.) As to the remaining claims—disability discrimination and failure to accommodate under the

1  Rehabilitation Act—the Court referred the case to Magistrate Judge Elizabeth Laporte for the
2  purposes of settlement. (Dkt. No. 39.)
3        The parties participated in a settlement conference on January 9, 2015, which culminated in
4  an on-the-record hearing before Judge Laporte. (Dkt. No. 49.) Plaintiff, his attorney Marc Guillory,
5  and defense counsel Michael Bruno and Jeffrey Blair were all present. (*Id.*) At the outset of the
6  proceedings on the record, Judge Laporte stated that "the parties have reached an agreement to settle
7  this case, and that the essential terms are going to be recited, *all* the essential material terms, one of
8  which being that although the parties intend to further reduce this to writing, *whether or not that*
9  *occurs the agreement is intended to be binding and effective as stated on the record today* with the
10 sole contingency that will be mentioned." (*Id.* at 7 (emphasis added).)
11       Defense counsel outlined the following terms in open court:

> [A] payment by the defendant to the plaintiff and his lawyer in the amount of $45,000, inclusive of fees, in exchange for a general release of all claims, except those claims that as a matter of law cannot be waived.
> The payment will be made pursuant to an IRS Form 1099.
> The agreement is subject to Civil Code 1542, a waiver of Civil Code 1542, meaning that all claims known or unknown to the greatest extent allowable by law are being waived in exchange for the payment.
> . . . Mr. Aki may not apply for or accept employment from the Lawrence Berkeley National Laboratory in the future.
> This agreement must be approved by the Department of Energy.[1]

(*Id.* at 7.) Immediately following the recitation of the terms, Judge Laporte asked Plaintiff if he
understood them. (*Id.* at 8.) Plaintiff responded that he did, but for one issue regarding payment; he
then clarified that payment should be directed solely to him "and not [him] and his lawyer." (*Id.*)
Defense counsel agreed. (*Id.*) Aside from that clarification, Plaintiff did not comment on the release
of claims or any other terms. (*Id.*)

      Judge Laporte then ensured that all parties agreed to the terms as stated on the record:

---

[1] This is the "sole contingency" Judge Laporte referred to in her initial statement. (Dkt. No. 49 at 7.) Defendant clarifies in its motion that the contingency is not currently at issue as the Department of Energy did, in fact, approve the terms of the settlement. (Dkt. No. 50-2 at 2-3.)

2

> The Court:  Very good.  So again, with that clarification, Mr. Aki, do you understand the terms of the settlement as just stated?
> [Plaintiff]:  Yes, Your Honor.
> The Court: And do you agree to them?
> [Plaintiff]:  Yes, Your Honor.
> The Court:  Thank you.  And I believe I've already asked you, but Mr. Guillory [Plaintiff's counsel], you agree that those are correctly stated?
> Mr. Guillory: Yes.
> The Court:  All right.  Thank you.  Then I'm going to ask the client representative, Mr. Blair, on behalf of [Defendant], do you understand the terms of the settlement as just stated?
> Mr. Blair:  Yes, I do.
> The Court: And do you agree with them?
> Mr. Blair: Yes.

(Dkt. No. 49 at 5-6.)  After receiving notice the case had settled, the Court entered an Order of Dismissal on January 12, 2015.  (Dkt. No. 45.)

According to defense attorney Michael Bruno, his associate reduced the settlement to writing and sent a proposed written Settlement and Release Agreement ("Written Agreement") to Plaintiff's counsel on January 29, 2015.  (Dkt. No. 50-2 at 2.)[2]  The Written Agreement included the same essential terms as those memorialized in the January 9 settlement hearing:  that in exchange for $45,000, Plaintiff would release all claims against Defendant.  (*Compare* Dkt. No. 49, *with* Dkt. No. 50-2 at 13-19.)  In a written response, Plaintiff's counsel neither suggested changes nor disagreed with any terms of the Written Agreement.  (Dkt. No. 50-2 ¶ 5.)

Mr. Bruno next avers that he received an email from Plaintiff on March 9, 2015, in which Plaintiff stated that he did not agree to the terms of the Written Agreement and therefore would not sign it.  (*Id.* ¶ 6 & Ex. C.)  Specifically, Plaintiff wrote that he only wanted to release Defendant from the two remaining claims in his complaint, instead of the general liability release described both in the Written Agreement and during the settlement hearing.  (*Id.*)  Mr. Bruno then reached out to

---

[2] It is well established that the Court can consider declarations from either party when ruling on a motion to enforce a settlement agreement.  *See, e.g.*, *Bd. of Trs. v. Valley Util. Servs., Inc.*, No. C-13-0271 EMC, 2013 WL 5817722, at *2 (N.D. Cal. Oct. 29, 2013) (considering the declaration of plaintiff's counsel to determine the enforceability of the settlement agreement); *Coombs v. Munoz*, No. C 09-00192 JSW, 2010 WL 731803, at *1 (N.D. Cal. Mar. 1, 2010) (referencing the declaration of defense counsel to determine the enforceability of the settlement agreement); *In re Lipid Scis., Inc.*, No. 08-4427 AT, 2009 WL 28949116, at *3 (Bankr. N.D. Cal. July 28, 2009) (examining the declarations of counsel for all parties to determine whether they intended to be bound by the settlement).

3

Plaintiff's counsel, who stated "[t]he settlement was placed on the record," and declined further comment. (*Id.* ¶ 6 & Ex. C.) Mr. Bruno avers that Plaintiff has since filed documents with the Court expressing his frustration with the settlement process and seeking to reopen the case and bring it to trial. (Dkt. No. 50-2 ¶ 7.) However, no such filings appear on the docket.

On March 20, 2015, Defendant sent a check for $45,000 to Plaintiff per the terms of the settlement. (Dkt. No. 50-2 at 3, 24-27.) It is unclear from the record whether Plaintiff has cashed the check. On March 23, 2015, Defendant filed the present motion to enforce the agreement. (Dkt. No. 50.) To date, Plaintiff has not filed an opposition or otherwise responded to Defendant's motion. (*See* Dkt. No. 51 (Reply & Notice of Plaintiff's Non-Opposition).)

**LEGAL STANDARDS**

A federal court has the equitable power to summarily enforce a settlement reached by the parties in a case pending before it. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). California law also specifically provides for "summary enforcement of settlement agreements." *Bd. of Trs. v. Valley Utility Servs., Inc.*, No. C-13-0271 EMC, 2013 WL 4817722, at *3 (N.D. Cal. Oct. 29, 2013) (citing Cal. Code Civ. P. § 664.6).

An action to enforce a settlement rests on "principles of contract formation to determine whether a settlement agreement exists." *Hatami v. Kia Motors Am., Inc.*, No. 08-226, 2011 WL 1456192, at *1 (C.D. Cal. Apr. 14, 2011) (internal citations omitted). "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). Whether or not the underlying cause of action is federal is thus immaterial to the contract formation inquiry. Here, California contract law governs the analysis because the parties litigated and settled the case in this state.

In California, the objective intent of the parties determines a contract's meaning. *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (citing Cal. Civ. Code §§ 1636, 1638). Therefore, the Court must look at the "intent manifested in the agreement" and the "surrounding conduct" of the parties instead of their subject beliefs to resolve what a contract means. *Id.* Likewise, an oral settlement agreement is binding where the objective intent of the

parties, "as evidenced by the words of the [oral agreement], not the parties' subjective intent[,]" was to make the agreement binding. *Elyaoudayan v. Hoffman*, 104 Cal. App. 4th 1421, 1430 (2003); *see also Doi v. Halekulani Corp.*, 276 F.3d 1131, 1138 (9th Cir. 2002) (holding that the plaintiff was bound to an oral settlement agreement when she verbally agreed to its terms before the court); *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1145 (9th Cir. 1977) ("A settlement agreement may be binding, in some circumstances, even if it is an oral one.").

## DISCUSSION

For the reasons outlined below, the Court concludes that the Settlement Agreement is enforceable. While the Court may interpret Plaintiff's failure to respond to Defendant's motion as a concession to its arguments, *see Guevara v. Marriot Hotel Servs. Inc.*, No. C 10-5347 SBA, 2013 WL 6172983, at *7 (N.D. Cal. Nov. 25, 2013), the Court nonetheless addresses the merits of the motion.

**A.    The Settlement Agreement is Enforceable.**

In California, "[a] settlement agreement in a pending action may be enforced if two requirements are met: (1) both parties must have agreed to the terms of the settlement . . . , and (2) it must be a complete agreement." *Page v. Horel*, No. C-09-0289 EMC (pr), 2011 WL 5117562, at *4 (N.D. Cal. Oct. 28, 2011). The agreement at issue here meets both tests.

With respect to the parties' agreement, at the hearing the parties stated clearly on the record that they understood and agreed to the settlement's terms. (Dkt. No. 49 at 5-6.) On Plaintiff's end, the Court confirmed that he understood and agreed to the terms, then doubled back to ensure his attorney also agreed. (*Id.*) Notably, Plaintiff did stop to clarify one of the terms regarding payment, indicating that he was able to correct any terms he did not understand or agree to. (*Id.* at 4.)

Not only did the parties explicitly agree to the terms outlined in the settlement hearing, they also agreed that the oral memorialization of those terms would constitute a binding agreement, whether or not a written settlement followed. (*Id.* at 2-3.) The parties' unambiguous statements to Judge Laporte thus reflect an objective intent to agree to the terms explained during the settlement hearing—including the agreement's finality. The settlement was therefore "agreed upon." *See Page*, 2011 WL 5117572, at *4.

The settlement agreement is also complete. Under California law, a complete contract must identify the parties involved, have a lawful objective, demonstrate mutual consent, and contain sufficient consideration. *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1585 (2005) (citing Cal. Civ. Code § 1550). Based on the transcript of the on-the-record settlement proceedings, there is no doubt that each of these elements was met here. First, both parties bound to the agreement (or their authorized representatives) were present and identified orally on the record. (Dkt. No. 49 at 2.) Second, as described above, mutual assent is present here because both parties plainly consented to the settlement terms in open court. (*Id.* at 5-6.) *See also Stewart*, 134 Cal. App. 4th at 1587 (noting that where "there was no indication from the document that it was conditional or that plaintiff did not intend to be bound by its terms," there was "mutual assent" to the contract). Third, the goal of the agreement was to settle the parties' legal dispute, which is a lawful objective. (Dkt. No. 49 at 3.) *See Stewart*, 134 Cal. App. 4th at 1586 (holding that "resolving litigation" is a "lawful object" for a contract). Finally, the exchange of $45,000 for a release of claims constitutes sufficient consideration. (Dkt. No. 49 at 3.) *See also Murphy v. T. Rowe Price Prime Reserve Fund, Inc.*, 8 F.3d 1420, 1423 (9th Cir. 1993) (noting that under California contract law, "the relinquishment of a *colorable* legal claim" constitutes sufficient consideration) (internal citation and quotation omitted).

Plaintiff has not responded to Defendant's motion. But any argument consistent with Plaintiff's email to defense counsel—*i.e.*, that the settlement agreement is not binding due to his misperception about the scope of the release—is unavailing. (*See* Dkt. 50-2 ¶ 6 & Ex. C.) A unilateral mistake of fact is not a basis to rescind a contract unless the other party had reason to know of or caused the mistake, or unless the effect of the mistake would make enforcement of the contract unconscionable. *See Donovan v. RRL Corp.*, 109 Cal. Rptr. 2d 807, 822-24 (2001). Neither scenario is present here. First, there is no evidence in the record that suggests Defendant knew of or caused Plaintiff's misunderstanding regarding the liability release. During the settlement hearing, Defendant stated that the $45,000 payment to Plaintiff would be "in exchange for a *general release of all claims*, except those claims that as a matter of law cannot be waived." (Dkt. No. 49 at 3 (emphasis added).) Having clarified the release provision in open court, it would be unreasonable to presume that

Defendant knew or caused Plaintiff to hold a different understanding of what claims would be released.

Second, there is nothing unconscionable about enforcing this settlement agreement. District courts regularly enforce settlement agreements where a party "later refuse[s] to execute a formal agreement to dismiss the action" after entering such an agreement "on the record in open court." *Henderson v. Yard House Glendale, LLC*, 456 F. App'x 701, 702 (9th Cir. 2011); *see, e.g.*, *Page*, 2011 WL 4117562, at *4 (holding that the parties' settlement agreement was enforceable "even though it had not yet been reduced in writing"); *Schiff v. City & Cnty. of San Francisco*, No. C-03-4345 MMC, 2007 WL 2301773, at *10 (N.D. Cal. Aug. 8, 2007) (concluding that the Court had the authority to enforce a settlement where "the terms and existence of the agreement [were] in the record" of the settlement hearing); *Sangerman v. Theriault Enters. Inc.*, No. C-05-04183, 2007 WL 707502, at *1-2 (N.D. Cal. Mar. 6, 2007) ("[T]he fact that defendants have not signed the written settlement agreement does not bar enforcement of the orally agreed-upon terms contained in the contract."); *Bryant v. Amtrak*, No. 08cv458-WQH-RBB, 2011 WL 291233 at *3 (S.D. Cal. Jan. 26, 2011) (enforcing an oral settlement agreement where the parties intended to be bound whether or not a formal "long form agreement" was prepared afterward). This is true whether or not the plaintiff responds to the motion to enforce the settlement agreement. *See, e.g.*, *Payrolling.com Corp. v. WMBE Payrolling, Inc.*, No. 11-CV-1072-IEG DHB, 2013 WL 1187019, at *1 (S.D. Cal. Mar. 20, 2013) (enforcing an oral settlement agreement where the plaintiff failed to respond to defendant's motion to enforce); *Bryant*, 2011 WL 291233 at *2-3 (enforcing an oral settlement agreement where the plaintiff failed to file an opposition or response to motion to enforce).

In short, "the law does not allow someone to rescind a contract simply because he no longer likes the terms to which he agreed." *See Page*, 2011 WL 5117562, at *7. Here, Plaintiff stated in no uncertain terms that he understood and agreed to the settlement announced in open court—including the provision that he would release all claims against Defendant in exchange for the $45,000 payment. (Dkt. No. 49 at 5.) Plaintiff had opportunity to amend or clarify any and all terms at the settlement hearing. (*Id.* at 8.) Though he sought and obtained clarification as to one term, he did not

amend the release language, which plainly and unambiguously binds him to release all claims except those that cannot as a matter of law be waived. (*Id.* at 4.)

In sum, the parties agreed in open court to a settlement that identified the parties, demonstrated mutual assent, had a lawful objective, and was supported by sufficient consideration. The Court does not find that an evidentiary hearing is required to resolve this motion to enforce. "Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). But here, the existence of a settlement agreement and its particular terms are plainly set forth in the transcript of the settlement hearing before Judge Laporte. (Dkt. No. 49.) Plaintiff has failed to file an opposition or response to Defendant's motion to enforce the settlement that raises a genuine dispute as to any of the material facts at issue; thus, there is no dispute before the court over the settlement agreement's terms or existence. The Court therefore concludes on the basis of the record before it that the parties agreed to a complete and lawful, and therefore enforceable, agreement to settle this action.

## CONCLUSION

For the reasons explained above, Defendant's Motion to Enforce Settlement is GRANTED. In accordance with the Court's January 12, 2015 Order (Dkt. No. 45), this action is DISMISSED with prejudice.

This Order terminates Docket No. 50.

**IT IS SO ORDERED.**

Dated: April 17, 2015

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE